# JACKSON WHITE
### ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona  85201
Telephone No.:      (480) 464-1111
Facsimile No.:      (480) 464-5692
Email:      centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By:      Michael R. Pruitt, SBN 011792
      Email:      mpruitt@jacksonwhitelaw.com
      Nathaniel J. Hill, SBN 028151
      Email:      nhill@jacksonwhitelaw.com
      Grant S. Cragun, SBN 034332
      Email:      gcragun@jacksonwhitelaw.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Atamai Stanley, Julio Carrera, and Victor Garcia, filing individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | **COLLECTVE AND CLASS ACTION COMPLAINT** |
| v. | **(Jury Trial Requested)** |
| GMS Concrete Specialists, Inc., an Arizona corporation, | |
| Defendant. | |

Plaintiffs Atamai Stanley, Julio Cesar Carrera, and Victor Garcia (collectively "Plaintiffs"), filing individually and on behalf of all others similarly situated, by and through their counsel undersigned, bring this collective action and class action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Arizona wage laws, A.R.S. § 23-350, *et seq.* ("Arizona Minimum Wage Act").

## THE PARTIES

1.      Plaintiffs are filing this collective action and class action individually and on behalf of all other similarly situated current and former employees of GMS Concrete Specialists, Inc. ("GMS").

2.      Plaintiff Stanley is, and at all relevant times to this action has been, a single man residing in Maricopa County, Arizona.

3.      Plaintiff Julio Cesar Carrera is, and at all relevant times to this action has been, a single man residing in Maricopa County, Arizona.

4.      Plaintiff Victor Garcia is, and at all relevant times to this action has been, a single man residing in Maricopa County, Arizona.

5.      Defendant GMS is an Arizona corporation with its principle place of business in Maricopa County, Arizona.

6.      Under the FLSA and Arizona Wage Act, Defendant is an "employer" as defined by these statutes.

7.      At all relevant times, Plaintiffs were "employees" of Defendant GMS under the FLSA, 29 U.S.C. § 201, *et seq.*

8.      Plaintiff Stanley's Consent to Become Party Plaintiff and Opt-In to Lawsuit pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit "1."

9.      Plaintiff Carrera's Consent to Become Party Plaintiff and Opt-In to Lawsuit pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit "2."

10.     Plaintiff Garcia's Consent to Become Party Plaintiff and Opt-In to Lawsuit pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit "3."

11.     At all material times hereto, Defendant acted in its own interest, through its agents and/or employees and is therefore subject to individual liability for the actions of those agents and/or employees under the FLSA.

12.     The provisions set forth in The Arizona Wage Act, A.R.S. Title 23, Articles 7 and 8 apply to Defendant.

13.     At all relevant times, Plaintiffs were "employees" of Defendant as defined by A.R.S. § 23-350.

14.     At all relevant times, Defendant was and continues to be an "employer" as defined by A.R.S. § 23-362.

15.    Defendant directed and exercised control over Plaintiffs' work and wages, at all relevant times, through an enterprise or an agent.

**JURISDICTIONAL ALLEGATIONS**

16.    Claims in this action include claims arising under the illegal employment actions of GMS under the statutes of the United States involving violations of the FLSA's wage and hour provisions.  Claims in this matter arise under federal statute, and thereby, this Court has original jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

17.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy as the FLSA claim.  The state and federal claims contain common facts, the state law claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because events giving rise to the claims occurred in the State of Arizona within this District.

19.    The United States District Court for the District of Arizona has personal jurisdiction because Defendant conducts business within this District and the actions giving rise to this Complaint occurred in this District.

20.    As provided for by the FLSA, 29 U.S.C. § 216(b), this action is brought by Plaintiffs individually for unpaid wages, overtime, liquidated damages, attorneys' fees, costs, and interest under the FLSA.

21.    As provided for by the FLSA, 29 U.S.C. § 216(b), this action is also brought on behalf of all current and former GMS employees who are or were similarly situated with Plaintiffs.

22.    The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981).  The FLSA requires employers to pay all non-exempt employees a minimum wage for all time spent working during regular forty hour workweeks.  *See* 29 U.S.C. § 206(a).  Under the

FLSA, employers are required to pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of forty hours in a workweek. *See* 29 U.S.C. § 207.

23.    GMS is a covered employer and enterprise subject to the provisions of the FLSA since it is engaged in commerce and generates annual revenue in excess of $500,000.

24.    During the relevant time period, Plaintiffs were employees of GMS covered by the provisions and protections contained in the FLSA.

25.    Plaintiffs' job duties are such that they were engaged in commerce as defined by the FLSA.

26.    Claims in this action also arise under the Arizona Minimum Wage Act, A.R.S. § 23-363, which establishes a minimum wage within the State of Arizona.

27.    This Court has supplemental jurisdiction for those claims arising under Arizona statute or common law pursuant to 28 U.S.C. § 1367.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

28.    Plaintiffs bring Count I, the FLSA failure to pay wages in violation of U.S.C. § 201 *et seq*., and Count II, the FLSA off-the-clock unpaid overtime claim, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the following similarly situated employees of Defendant: All hourly, non-exempt concrete or construction laborers, regardless of actual title, who worked for Defendant during the last three years at any client site in Arizona ("Collective Action Members").

29.    A collective action is a superior method for bringing this action in that there is a well-defined community of interest in the questions of law and fact.

30.    Plaintiffs and Collective Action Members are similarly situated and are subject to Defendant's common practices, policies, or plans of failing to compensate them for all hours worked and refusing to pay the required amount of overtime compensation in violation of the FLSA.

31.    Plaintiffs, on behalf of themselves and the Collective Action Members, seek relief on a collective basis challenging Defendant's practice of failing to accurately record work time and pay its employees for all hours worked, including overtime. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs to the collective action may be

determined from Defendant's records, and potential Collective Action Members may easily and quickly be notified of the pendency of this action.

32.     Plaintiffs are similarly situated to the Collective Action Members because they are all subject to similar payroll policies and procedures.  Defendant requires the similarly situated Collective Action Members to work overtime but fails to pay them for all hours worked, including overtime resulting from work done pre-shift, during working hours, and post-shift.   The Collective Action Members are also similarly situated because they all utilize Defendant's time recording and reporting practices, which fail to accurately account and pay for all time worked, including overtime.

33.     Defendant's overtime wage practices were routine and consistent. Throughout the relevant time period over the past three years, the Collective Action Members regularly were not paid the proper overtime wage despite working in excess of forty hours per week.

34.     Plaintiffs and the Collective Action Members performed the same or similar job duties.  Moreover, they regularly worked more than forty hours in a workweek.  Accordingly, the employees victimized by Defendant's unlawful patterns and practices are similarly situated to Plaintiffs in terms of employment and pay provisions.

35.     Defendant's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action.  Thus, Plaintiffs' experiences are typical of the experience of the others employed by Defendant.

36.     The Collective Action Members, including Plaintiffs, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty.  Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

37.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the practice of wage and hour law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with the putative members of this collective action.

38.     Because Plaintiffs and Collective Action Members were/are subject to Defendant's common practices, policies, or plans of failing to compensate at legally required rates in violation of the FLSA, this Court should conditionally certify the Collective Action and authorize facilitated notice to similarly situated individuals pursuant to Section 216(b) of the FLSA and *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

39.     On information and belief, the names and addresses of additional Collective Action Members are available from Defendant, and notice should be provided by first class mail to their last known address and by workplace posting as soon as possible.

**<u>CLASS ACTION ALLEGATIONS</u>**

40.     Plaintiffs, on behalf of themselves and all other individuals similarly situated, repeat and re-allege each and every allegation by reference contained in all previous paragraphs.

41.     Plaintiffs, as class representatives, brings Count III, the Arizona Wage Statute claim, as a Rule 23 class action on behalf of themselves and the following persons: All hourly, non-exempt construction laborers, regardless of actual title, who worked for Defendant during the last year at client sites in Arizona ("Arizona Class Members").

42.     Plaintiffs' Rule 23 class claim (Count III) satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

43.     <u>Ascertainability</u>.    The identity of all Arizona Class Members is readily ascertainable from Defendant's records, and class notice can be provided to all Arizona Class Members by conventional means such as U.S. mail, email, and workplace postings.

44.     <u>Numerosity</u>.  Plaintiffs' Rule 23 class claim (Count III) satisfies the numerosity requirement of a class action.  The Arizona Class Members identified above are so numerous that joinder of all members is impracticable.  Although the precise number of potential class members is unknown, and the facts for calculating that number are presently within the sole control of Defendant, upon information and belief, there are dozens of Arizona Class Members.

45.     <u>Common Questions of Law and Fact</u>.  Questions of law and fact common to the Arizona Class Members predominate over questions that may affect only individual members

because Defendant has acted on grounds generally applicable to all Arizona Class Members. Among the questions of law and fact common to Plaintiff and the Arizona Class Members are:

    a.  whether Defendant employed the Arizona Class Members within the meaning of the Arizona Wage Statute;

    b.  whether Defendant owes the Arizona Class Members wages in exchange for all work performed, including travel time to various job sites and pre-shift and post-shift work;

    c.  whether Defendant unlawfully failed to timely pay Arizona Class Members wages for all hours worked, including travel time to various job sites and pre-shift and post-shift work;

    d.  whether Defendant is liable for damages under the Arizona Wage Statute, including but not limited to compensatory damages, interest, and treble damages.

46.  <u>Typicality</u>.  Plaintiffs' claims under Arizona state law are typical of those of the Arizona Class Members in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful payroll practices as Plaintiffs.

47.  <u>Propriety of Class Action Mechanism</u>.  The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.  A class action is appropriate for the fair and efficient adjudication of this controversy.  Defendant acted or refused to act on grounds generally applicable to the entire class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the class members to protect their interests.  The damages suffered by individual class members may be relatively small, and the expense and burden of individual litigation make it

virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

48.    <u>Adequacy of Class Representative and Counsel for the Class</u>.  Plaintiffs will fairly and adequately represent the interests of the Arizona Class Members and have retained counsel that is experienced and competent in the practice of wage and hour law and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with those members of this class and collective action.

## BACKGROUND FACTS

49.    At all material times, Defendant GMS is in the construction industry specializing in residential and light commercial concrete.

50.    Plaintiff Carrera was hired in October 2017 as a laborer for Defendant.  Plaintiff Carrera drove crews to various job sites where he and the crew would prepare the foundation and framing for another crew to pour concrete.

51.    Upon his hire, Plaintiff Carrera agreed to be paid at an hourly rate above minimum wage for all services performed for Defendant.

52.    Plaintiff Garcia was hired in February 2018 as a laborer for Defendant.  Plaintiff Carrera drove crews to various job sites where he and the crew would prepare the foundation and framing for another crew to pour concrete.

53.    Upon his hire, Plaintiff Garcia agreed to be paid at an hourly rate above minimum wage for all services performed for Defendant.

54.    Plaintiff Stanley was hired in September 2018 as a laborer for Defendant.  Plaintiff Stanley worked on crews to pour and finish concrete for residential foundations.

55.    Upon his hire, Plaintiff Stanley agreed to be paid at an hourly rate above minimum wage for all services performed for Defendant.

56.    Plaintiffs and other similarly situated workers typically worked for Defendant five days per week for the entire duration of their employment, typically working at least forty hours each week.

57.     At all relevant times, Plaintiffs and other similarly situated workers arrived at the GMS company lot between approximately 4:00 and 4:30 a.m. to load necessary and essential tools, equipment, and materials onto the work trucks.  The tools, equipment, and materials that Plaintiffs loaded onto the work trucks were company-owned and necessary and essential to perform the work at each day's job site.

58.     Plaintiffs and other similarly situated workers were expected to load the work trucks with the necessary tools and materials for each job.

59.     Plaintiffs and other similarly situated workers then either drove or drove in the work trucks from the GMS company lot to a particular job site to perform the work.  The drive from the company lot to the job site ranged from approximately forty minutes to one hour.

60.     Plaintiffs and other similarly situated workers were not clocked-in until after arriving at the job site and beginning to perform work.  The foreman would clock them in through a tablet which was only kept in the possession of the foreman.  Plaintiffs and other similarly situated workers did not have access to the tablet or another company device and were not able to clock in prior to arriving at the job site.  Upon ending specific duties at the job site, Plaintiffs' foreman would clock them and the other workers out again using the tablet.

61.     Plaintiffs would then either drive or be driven to another job site, which would range from 30 to 60 minutes of travel time.  Defendant did not compensate Plaintiffs during this travel time to the new site.

62.     By the end of each work day, Plaintiffs typically drove to and worked at three to four job sites. The travel time to and from all of the job sites was not properly compensated to Plaintiffs.

63.     GMS would sometimes grant Plaintiffs Carrera and Garcia an arbitrary one hour per day of pay for drive time, even though the drive time would consistently and significantly exceed one hour.  Plaintiff Stanley did not receive any compensation for drive time.

64.     As a result, Plaintiffs and other similarly situated workers were not fully paid for the significant time they spent each day doing the following: (1) loading the work trucks with the necessary tools and materials to perform the work; (2) driving to the job site; (3) unloading the

truck; (4) reloading the truck; (5) driving to the next job site; (6) repeating that process at subsequent job sites; (7) returning to the company lot at the end of the day; and (8) unloading the tools from the work trucks at the GMS company lot.

65.     Plaintiffs and other similarly situated workers routinely worked a minimum of forty hours each workweek, and were known to often work in excess of forty hours in a workweek. However, Plaintiffs and other similarly situated workers were not properly compensated for the time they worked for Defendant because they were clocked-in after the passage of a significant amount of time after starting work, were clocked-out each time they went to the next job site before being clocked-in again after arriving at the new site (a process that was repeated multiple teams per day), and clocked-out a significant amount of time before ending work.

66.     Considering work performed at the beginning and end of each work day, plus travel time to and from job site locations, Plaintiffs estimate that they and other similarly situated workers were not credited for at least several hours of work each day.

67.     The cumulative effect was that Plaintiffs and other similarly situated workers were not paid minimum wage for hours that they worked and not paid overtime for working more than forty hours in a workweek.

68.     Plaintiff Stanley repeatedly complained to his foreman about the time he spent working off-the-clock; however, the foreman did not want to discuss Plaintiff Stanley's concerns.

69.     In or around March 2019, Plaintiff Stanley again complained about not being credited or paid for all hours worked and not receiving accurate overtime compensation.  Almost immediately after raising these complaints, Plaintiff Stanley was terminated.

70.     In or around summer 2018, Plaintiffs Carrera and Garcia were told to come in on a Saturday.  When both told GMS they would not come in, Plaintiff Carrera was suspended for three days and Plaintiff Garcia was suspended for one week.

71.     When GMS, at a later time, again asked Plaintiff Garcia to come in on a Saturday, Plaintiff Garcia told GMS he would not do so and that he would report GMS for employing undocumented workers if GMS tried to coerce him into coming in.  GMS did not suspend Plaintiff Garcia at that time.

72.    Plaintiff Garcia complained about not being compensated for his actual driving time.  After complaining, Plaintiff Garcia noticed that his paystub, which typically accounted for some of his driving time in a separate category, no longer represented any driving time. Moreover, Plaintiff Garcia received significantly less money in his paycheck.

73.    After raising several complaint, including about his lack of compensation for driving time, Plaintiff Garcia was treated differently by his superiors.  On one occasion, Plaintiff Garcia complained that a work truck was being driven by someone without a proper license and that the truck would leave earlier than it was required to, often leaving Plaintiff Garcia behind. When Plaintiff Garcia threatened to report that the driver was not properly licensed, GMS retaliated by telling Plaintiff Garcia to stay home because there was not enough work for him.

74.    On several occasions, Plaintiff Garcia would show up at 4:00 AM to the GMS company lot only to be told by his supervisors to go home for the day.  Moreover, GMS transferred Plaintiff Garcia to another crew and reduced his pay.  GMS cut Plaintiff Garcia's hours so frequently that he felt he could no longer work at GMS and resigned.

75.    Plaintiff Carrera likewise complained about working off-the clock and not being compensated.  In or around July 19, 2019, Plaintiff Carrera confronted his supervisor about not being compensated properly for his work.  While Plaintiff Carrera was voicing his concerns to his supervisor, his supervisor told him to "shut the f*** up" and immediately terminated him by stating, "You know what? You're fired."

76.    GMS's conduct was willful because it engaged in a pattern and practice of not paying accurate wages and overtime to vulnerable workers.

77.    For example, upon information and belief, GMS engages in a pattern and practice of employing undocumented workers and individuals with criminal backgrounds.

78.    Because these undocumented workers and individuals with criminal backgrounds have limited employment opportunities, GMS knowingly and intentionally exploits their vulnerability by not paying them for all hours worked.

79.    Plaintiff Stanley was a vulnerable worker because he was released from prison just prior to his employment with Defendant.  As a result, Defendant was fully aware that Plaintiff

Stanley's prospective employment was limited.  This made Plaintiff Stanley vulnerable and Defendant took advantage of Plaintiff by forcing him to work off the clock.

80.    Upon information and belief, GMS compelled these vulnerable workers to work off the clock because they were less likely to complain or were compelled to accept the unfair labor practices of GMS.  When Plaintiff Stanley complained, he was terminated.

81.    As a result of Defendant's illegal wage practices, Plaintiffs and other similarly situated workers were forced to perform work at an hourly rate that was less than the applicable minimum wage.

82.    Defendant's willful failure to compensate Plaintiffs and other similarly situated workers at the applicable minimum wage for such hours worked violates 29 U.S.C. § 206(a).

83.    Defendant has and continues to violate the FLSA by refusing to pay Plaintiffs and other similarly situated workers the full applicable minimum wage for all hours worked during their regular workweeks.

84.    During each and every workweek in which Plaintiffs and other similarly situated workers were or are employed with Defendant, Defendant failed to pay them at least minimum wage for all hours they worked for Defendant.  Therefore, Defendant paid these workers less than the overall minimum wage for such work that they performed for Defendant, such that the average of their hourly wages was less than the applicable minimum wage, in willful violation of 29 U.S.C. § 206(a).

85.    Defendant owes Plaintiffs and other similarly situated workers wages for each and every workweek during which they worked for Defendant for the entire duration of their employment, or for the applicable limitations period.

86.    When an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

87.    Defendant failed to regularly and accurately maintain the record of time for the entire duration of Plaintiffs' employment with Defendant.  As a result, Defendant's records of

Plaintiffs' time worked grossly understates the actual duration of time Plaintiffs worked during the entire duration of their employment with Defendant.

88.    Upon information and belief, Defendant also failed to maintain accurate records for all other similarly situated workers.

89.    Defendant neglected to pay Plaintiffs and other similarly situated workers minimum wages and overtime wages for all hours worked in excess of forty hours per week. Therefore, Defendant failed to pay Plaintiffs and similarly situated workers minimum wage for all hours worked for Defendant and subsequently failed to pay them overtime wages for all hours worked in excess of forty hours per workweek.

90.    Defendant failed to appropriately compensate Plaintiffs and similarly situated workers the applicable minimum wage for all hours worked, in violation of 29 U.S.C. § 206.

91.    Furthermore, Defendant failed to compensate Plaintiffs and similarly situated workers the applicable overtime wages for all hours worked in excess of forty in a given workweek, violating 29 U.S.C. § 207.

92.    Defendant's failure to pay Plaintiffs and similarly situated workers the applicable minimum hourly wage for all hours worked also violates A.R.S. § 23-352.

93.    Plaintiffs and other similarly situated workers are each a covered employee within the meaning of the FLSA.

94.    Plaintiffs and other similarly situated workers were non-exempt employees.

95.    Defendant directed and exercised control over Plaintiffs and other similarly situated workers' work and wages at all relevant times, through an enterprise or agent.

96.    Due to Defendant's illegal wage practices, Plaintiffs and other similarly situated workers are entitled to recover from Defendant compensation for unpaid wages, an additional equal amount as liquidated damages, interest, and reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT I

**Failure to Pay Wages in Violation of the FLSA, U.S.C. § 201 *et seq*.**

**(Brought by Plaintiffs Individually and on Behalf of the Collective Action Members)**

97.     All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

98.     Defendant's practice of failing to pay Plaintiffs at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206(a).

99.     None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendant, Plaintiffs, or the Collective Action Members.

100.    Defendant's actions constituted a willful violation of the FLSA.

101.    This work was performed at Defendant's direction and/or with Defendant's knowledge.

102.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

103.    At all relevant times, Defendant willfully, regularly, and repeatedly failed, and continues to fail to make, keep, and preserve accurate time records required by the FLSA with respect to Plaintiffs and the Collective Action Members, including records determining the wages and hours of employment pertaining to Plaintiffs and the Collective Action Members.

104.    Plaintiffs and the Collective Action Members are therefore entitled to compensation for full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

## COUNT II

**Failure to Pay Overtime in Violation of the FLSA, U.S.C. § 201 *et seq*.**

**(Brought by Plaintiffs Individually and on Behalf of the Collective Action Members)**

105.    All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

106.    Plaintiffs and the Collective Action Members were to be paid an hourly wage in exchange for services as employees.

107.    Plaintiffs and the Collective Action Members regularly performed pre-shift and/or post-shift work causing them to work in excess of forty hours in certain workweeks.

108.    This work was performed at Defendant's direction and/or with Defendant's knowledge.

109.    Defendant failed to comply with 29 U.S.C. § 207 because Plaintiffs and the Collective Action Members worked for Defendant in excess of forty hours per week, but Defendant failed to pay them for those excess hours at the statutorily required rate of one and one-half times their regular rate of pay as required by the FLSA.

110.    Defendant willfully violated the FLSA by failing to pay Plaintiffs and the Collective Action Members all wages due including overtime premiums for all hours accrued beyond forty in a workweek.

111.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one-and-one-half times the applicable hourly rate at which employees are employed are applicable to Defendant, Plaintiffs, or the Collective Action Members.

112.    The policy of not paying all overtime wages due was knowing, willful, not taken in good faith, and done with the full knowledge and consent of the management of GMS.

113.    Plaintiffs and the Collective Action Members are therefore entitled to compensation at the applicable overtime rate for all hours worked in excess of forty per week, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

## <u>COUNT III</u>

**Failure to Timely Pay Wages Due in violation of A.R.S. § 23-351, *et seq*.**

**(Brought by Plaintiffs Individually and on Behalf of the Arizona Class Members)**

114.    All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

115.    Plaintiffs and the Arizona Class Members are each an "employee" as defined by A.R.S. § 23-350(2).

116.    Defendant is an "employer" as defined by A.R.S. § 23-350(3).

117.    Plaintiffs and the Arizona Class Members each provided Defendant with labor or services with a reasonable expectation of being paid.  Defendant suffered or permitted Plaintiffs and the Arizona Class Members to provide labor or services with the promise or understanding that they would be paid.  The labor or services provided to Defendant by Plaintiffs and other similarly situated workers are "wages" as defined by A.R.S. § 23-350(6).

118.    Defendant failed to pay Plaintiffs and the Arizona Class Members all wages earned by them in violation of A.R.S. § 23-351, *et seq.*

119.    By failing to pay Plaintiffs and the Arizona Class Members all wages due to them, Defendant has wrongfully violated the provisions of A.R.S. § 23-352 which prohibits an employer from withholding the payment of wages from an employee without legal authority, prior written permission from the employee, or a claim against the employee that would be a set-off against unpaid wages.

120.    Defendant does not qualify for an exemption to its obligations to timely pay wages to Plaintiffs or any Arizona Class Member.

121.    The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

122.    Pursuant to A.R.S. § 23-355, Plaintiffs and the Arizona Class Members are entitled to recover treble the unpaid and untimely paid wages owed by Defendant.

123.    Plaintiffs and the Arizona Class Members are also entitled to interest thereon at the highest legal rate provided by law until paid in full.

124.    As a result of Defendant's unlawful acts, Plaintiffs and the Arizona Class Members are entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

## <u>COUNT IV</u>

### FLSA Retaliation in Violation of 29 U.S.C. § 15(a)(3)

### (Brought by Plaintiff Stanley Individually)

125.    Plaintiff Stanley, on behalf of himself, reasserts the allegations set forth in the above paragraphs.

126.    The FLSA prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the act or causes to be instituted any proceeding under or related to the act.

127.    Plaintiff Stanley engaged in protected activity when he (1) complained to Defendant about its unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA, (2) discussed with Defendant's employees Defendant's unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA, and (3) notified Defendant of its wage violations.

128.    As a direct and proximate result of Plaintiff Stanley's complaints about Defendant's unlawful overtime and wage practices, Plaintiff Stanley eventually had the adverse employment action of being removed from work by Defendant.

129.    Defendant acted in retaliation when it removed Plaintiff Stanley from his job.

130.    There is a causal connection between Plaintiff Stanley engaging in the protected activity and the adverse employment action of removing Plaintiff Stanley from work in that but for Plaintiff Stanley engaging in the protected activity, Defendant would not have ended Plaintiff Stanley's employment.  Plaintiff Stanley's protected activity was a motivating factor in the decision by Defendant to remove Plaintiff Stanley from work.

131.    Defendant's actions were punitive, malicious, and in direct retaliation for his complaints of FLSA violations.

132.    As a direct and proximate result of Defendant's retaliation, Plaintiff Stanley suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

133.    Defendant's conduct in taking adverse action against Plaintiff Stanley's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff Stanley, and with a complete indifference of Plaintiff Stanley's rights.

134.    Defendant's conduct in taking adverse action toward Plaintiff Stanley's employment harmed Plaintiff and was malicious, oppressive, or in reckless disregard of his rights.

135.    Defendant therefore should be required to respond to Plaintiff Stanley in the form of a punitive or exemplary damage award under federal law.

## COUNT V

### FLSA Retaliation in Violation of 29 U.S.C. § 15(a)(3)

### (Brought by Plaintiff Carrera Individually)

136.    Plaintiff Carrera, on behalf of himself, reasserts the allegations set forth in the above paragraphs.

137.    The FLSA prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the act or causes to be instituted any proceeding under or related to the act.

138.    Plaintiff Carrera engaged in protected activity when he (1) complained to Defendant about its unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA, (2) discussed with Defendant's employees Defendant's unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA, and (3) notified Defendant of its wage violations.

139.    As a direct and proximate result of Plaintiff Carrera's complaints about Defendant's unlawful overtime and wage practices, Plaintiff Carrera was verbally abused by management and eventually had the adverse employment action of being removed from work by Defendant.

140.    Defendant acted in retaliation when it removed Plaintiff Carrera from his job.

141.    There is a causal connection between Plaintiff Carrera engaging in the protected activity and the adverse employment action of removing Plaintiff Carrera from work in that but for Plaintiff Carrera engaging in the protected activity, Defendant would not have ended Plaintiff Carrera's employment.  Plaintiff Carrera's protected activity was a motivating factor in the decision by Defendant to remove Plaintiff Carrera from work.

142.    Defendant's actions were punitive, malicious, and in direct retaliation for his complaints of FLSA violations.

143.    As a direct and proximate result of Defendant's retaliation, Plaintiff Carrera suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

144.    Defendant's conduct in taking adverse action against Plaintiff Carrera's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff Carrera, and with a complete indifference of Plaintiff Carrera's rights.

145.    Defendant's conduct in taking adverse action toward Plaintiff Carrera's employment harmed Plaintiff and was malicious, oppressive, or in reckless disregard of his rights.

146.    Defendant therefore should be required to respond to Plaintiff Carrera in the form of a punitive or exemplary damage award under federal law.

**WHEREFORE**, Plaintiffs and all similarly situated employees demand judgment against Defendant, and pray this Court:

a.    Certify the claim set forth in Count I above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly, non-exempt construction laborers, regardless of actual title, who worked for Defendant during the last three years at a client site in Arizona, informing them of their right to file consents to join the FLSA portion of this action;

b.    Certify the claim set forth in Count II above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly, non-exempt construction laborers, regardless of actual title, who worked for Defendant during the last three years at a client site in Arizona, informing them of their right to file consents to join the FLSA portion of this action;

c.    Designate Plaintiffs Stanley, Carrera, and Garcia as the Representative Plaintiffs of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

d.    Declare and find that Defendant violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206, by failing to pay proper minimum wages;

e.    Declare and find that Defendant violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay proper overtime wages;

f.    Award Plaintiffs their unpaid overtime damages, to be determined at trial;

g.    Award Plaintiffs compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), to be determined at trial;

h.    Award Plaintiffs and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

i.    Award Plaintiffs and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations;

j.    Certify the state law claim set forth in Count III above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

k.    Designate Plaintiffs Stanley, Carrera, and Garcia as the Class Representatives of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

l.    Declare and find that Defendant has violated A.R.S. Title 23, Chapter 2, by failing to pay wages owed to Plaintiffs and the Arizona Class Members;

m.    Award Plaintiffs and the Arizona Class Members unpaid minimum wage damages, to be determined at trial;

n.    Award Plaintiffs and the Arizona Class Members compensatory damages and treble damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-350 *et seq.*;

o.    Award Plaintiffs and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

p.    Award Plaintiffs and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DATED** this 16ᵗʰ day of August, 2019.

**JACKSON WHITE**


   /s/ Nathaniel J. Hill
By:   Michael R. Pruitt, SBN 011792
       Nathaniel J. Hill, SBN 028151
       Grant S. Cragun, SBN 034332
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiff*

F:\STU\Stanley, Atamai\Pleadings\Complaint.v5.docx